### KING v. WILL J. BLOCK AMUSEMENT CO.

(Supreme Court, Trial Term, New York County. December, 1908.)

1. EVIDENCE (§ 179*)—BEST AND SECONDARY.

   Secondary evidence of the contents of a written contract may be given, where the adverse party has the original and refuses to produce on notice.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 595–599; Dec. Dig. § 179.*]

2. MASTER AND SERVANT (§ 41*) — BREACH OF CONTRACT BY MASTER — MEASURE OF DAMAGES.

   Where plaintiff was ready and able to perform a written contract of employment, but performance was prevented by the other party, plaintiff is entitled as damages to the difference between what she would have earned, if allowed to perform said contract, and what she actually did earn.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 50–53; Dec. Dig. § 41.*]

Action by one King against the Will J. Block Amusement Company. Judgment for plaintiff.

P. N. Turner, for plaintiff.

H. T. Goldsmith (D. Gerber, of counsel), for defendant.

BLANCHARD, J.  The plaintiff has brought this action upon a written contract of employment as an actress. She alleges the making of the contract, readiness and willingness on her part to perform, the breach of it by the defendant, and the damages she has suffered in consequence. The case came on for trial before the court and a jury. At the close of the testimony all questions of law and fact were submitted to the court.

The plaintiff has testified to the signing of the contract by herself and the defendant, by its president, in duplicate, and each retaining a duplicate. This was objected to on the ground that the subscribing witness must be called. The court overruled the objection and permitted the plaintiff to testify. See chapter 195, p. 200, Laws 1883. The duplicate original of the contract retained by the plaintiff had been

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lost. She swore that she gave it to her attorney, and he testified to its loss and called upon the defendant to produce, pursuant to the notice served upon it, the other original duplicate of the contract. The defendant failed to produce it. Thereupon the plaintiff offered what had been proved to be an exact copy of the original contract, and it was allowed in evidence, subject to the objection and exception of the defendant. Chase's Stephen, Digest of Evidence (2d Ed.) p. 186, says:

"Secondary evidence may be given of the contents of a document (a) when the original is shown or appears to be in the possession or power of the adverse party, and when, after the notice, * * * he does not produce it."

The same author, at page 187, says:

"The party refusing to produce on notice incurs the penalty of having all inferences from the secondary evidence, if such evidence be vague, imperfect, or uncertain, taken most strongly against himself."

See, also, Cahen v. Continental Ins. Co., 69 N. Y. 300.

Looking into the contract, it appears that the defendant agreed to star the plaintiff in a play to be selected by her, which play was to be produced on or before a certain date. The plaintiff was to be employed at least 30 weeks, and for such additional time as the play was a financial success, and was to receive as compensation certain percentages of the receipts, and the defendant guaranteed and agreed that in no week should the plaintiff receive less than $300. The contract was entered into February 10, 1906, and provided for the production of a play on or before September 15, 1906. The plaintiff faithfully kept her part of the agreement in so far as she was given opportunity. She selected a play, which was accepted by the defendant. She kept herself in readiness at all times to perform, and urged the defendant to hasten its preparation for the production of the play. The defendant offered various and plausible excuses for its delay until October 5, 1906, when, without any apparent reason or excuse, it broke its contract and notified the plaintiff of its refusal to perform. The plaintiff sought employment elsewhere, but failed to find it during the 30 weeks covered by the contract.

The plaintiff has established her right to damages for the breach of the contract, and they are to be measured by the difference between the contract price of her services and the amount she actually earned. Under the contract she was to receive at least $300 per week for 30 weeks, which would amount to $9,000, and as she earned nothing during that period she is entitled to that sum and interest. It is difficult to understand how one can read the whole contract through and reach a different conclusion. The case falls within a most familiar rule of law. When A. engages B. to perform certain work for a certain wage, and then refuses to give the opportunity to do the work, performance by B. is excused, and he can recover as damages the value of his services fixed in the contract, less any earnings received during the period of employment.

I have not overlooked the other contentions of the defendant, especially those relating to the power of the president of the defendant to make the contract and the legal effect of the term "actually per-

form." The president of the defendant was its general manager as well, and, the business of the defendant being the production and presentation of amusements, it was quite within the implied powers of its president and general manager to employ the plaintiff. Besides, it appears that others of the board of directors of the defendant were present when the contract was negotiated and signed, and the plaintiff cannot be made to suffer merely because the defendant failed in its duty to keep a record of the transaction.

Nor does the term "actually perform," as used in the agreement, have the legal force or effect which is claimed for it by the defendant. The term is used in a subordinate part of the agreement, and relates to the sickness or other cause personal to the plaintiff and to times when the company may not be engaged. It does not affect the positive and unqualified agreement of the defendant to employ the plaintiff, nor can it in reason be made to apply to actual performance, which was made impossible by the act of the defendant itself. The plaintiff was always ready to "actually perform," and was prevented from doing so by the wrongful act of the defendant, and it may not profit therefrom.

Judgment is directed for the plaintiff in the sum of $9,000, with interest thereon from the date of trial, and the clerk is directed to enter same in his minutes as of that date.